

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. )      No. SD37827
)
KEITH EDWARD MCINTOSH, )      **Filed: January 26, 2024**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable Mark A. Powell, Judge

## <u>AFFIRMED</u>

Keith Edwards McIntosh appeals the judgment of the Greene County Circuit Court ("trial court") convicting him of one count of class A misdemeanor animal abuse and one count of class A misdemeanor assault in the fourth degree following a bench trial. In his only point on appeal, McIntosh claims the trial court erred by convicting him of animal abuse because there was insufficient evidence he purposely caused suffering to an animal. We deny this point and affirm the trial court's judgment.

### Factual Background and Procedural History

On October 5, 2021, E.B., the neighbor of McIntosh's daughter, went outside to talk to her two sons who were washing a truck in the driveway she shared with

1

McIntosh's daughter. When E.B. went outside, she heard a scuffle coming from the daughter's neighboring back yard. She heard yelping and what she described as "this horrifying screeching from a dog." E.B. thought one of her dogs had gotten into a fight with the neighbor's dog, so she and one of her sons ran over to look into the neighbor's back yard. E.B. saw McIntosh, while using the hand loop on a leash as a collar, "literally helicoptering the dog around the yard." McIntosh swung the dog off the ground and "around and around."

According to E.B., McIntosh appeared to be "in a pure rage, like evilness." McIntosh let the dog hit the ground, climbed on top of it, and began to choke it while slamming the dog's head into the ground. When E.B. told McIntosh to let the dog go, he replied, "Don't worry about this dog . . . [it] deserves what it gets." McIntosh told E.B. the dog was evil and that he was going to kill it as a sacrifice for the "devil." The dog was "screaming, yelping, and trying to get away." The dog ran straight toward E.B. and her son after McIntosh finally let it go. The dog was out of breath, and its eyes were watering. In E.B.'s words, "the dog was clearly in distress[.]"

The State charged McIntosh with one count of misdemeanor animal abuse under section 578.012 (Count I) on the basis he "purposely caused suffering to a dog." *See* section 578.012.[1] It additionally charged McIntosh with two counts of misdemeanor assault in the fourth degree alleging McIntosh recklessly caused physical pain by striking one of E.B.'s sons and her father, respectively (Counts II and III). *See* section 565.056.

---

[1] Unless otherwise indicated, all references to statutes are to RSMo 2016, including all applicable statutory changes effective January 1, 2017.

The case proceeded to a bench trial on November 8, 2022, at which point the State voluntarily dismissed Count II related to one of the assault in the fourth degree charges.

At trial, E.B. testified she had known the dog belonging to McIntosh's daughter since it was a puppy, and she never had an issue with the dog before. She described it as a mixed breed, small to medium-sized dog with a sweet demeanor. McIntosh testified in his own defense and claimed the dog was "food aggressive[.]"

The trial court found McIntosh guilty of animal abuse under Count I and assault in the fourth degree under Count III.[2] It sentenced McIntosh to concurrent terms of 180 days in jail on both counts, with execution of the sentences suspended, and a two-year, unsupervised probation period with special conditions.

**Analysis**

McIntosh claims, in his sole point on appeal, the trial court erred by entering a judgment of conviction and sentence for animal abuse under section 578.012 because "there was insufficient evidence Mr. McIntosh purposely caused suffering to a dog."[3]

---

[2] McIntosh's conviction and sentence for assault in the fourth degree is not at issue in this appeal. McIntosh has not raised any challenge to the sufficiency of the evidence underlying his conviction under Count III.

[3] We note McIntosh moved for a judgment of acquittal at the close of the State's evidence, which the trial court overruled, and then testified in his own defense. McIntosh waived any claim of error as to his motion for judgment of acquittal at the close of the State's evidence "by proceeding to put on a case." *State v. Hansen*, 660 S.W.3d 45, 49 (Mo. App. S.D. 2023). McIntosh did not separately move for a judgment of acquittal at the close of all evidence. Regardless, and "[w]hile the better practice is to preserve specific claims of error for review, arguments concerning sufficiency of the evidence, even those not preserved for appeal, are reviewed on the merits, not for plain error." *State v. Hartwein*, 648 S.W.3d 834, 844 (Mo. App. E.D. 2022) (quoting *State v. Zetina-Torres*, 482 S.W.3d 801, 808-09 (Mo. banc 2016)); *see also State v. Abel*, 590 S.W.3d

"The sufficiency of the evidence in a court-tried case is determined by the same standard as in a jury-tried case." ***State v. Halverson***, 541 S.W.3d 1, 3 (Mo. App. S.D. 2018) (quoting ***State v. Blair***, 298 S.W.3d 38, 43 (Mo. App. W.D. 2009)).  As such:

> We review the sufficiency of the evidence in a bench trial of a criminal case to determine "whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty; and in so doing, we examine the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences." *State v. Brown*, 360 S.W.3d 919, 922 (Mo. App. W.D. 2012) (citing *State v. Johnson*, 244 S.W.3d 144, 152 (Mo. banc 2008)). We will not, however, "supply missing evidence, or give the State the benefit of unreasonable, speculative, or forced inferences." *State v. Brown*, 457 S.W.3d 772, 779 (Mo. App. E.D. 2014).

***State v. Wood***, 597 S.W.3d 405, 407 (Mo. App. S.D. 2020) (quoting ***State v. Allen***, 508 S.W.3d 181, 186 (Mo. App. E.D. 2017)).  This review for sufficiency of the evidence affords circumstantial evidence the same weight as direct evidence.  ***State v. Clark***, 272 S.W.3d 432, 438 (Mo. App. S.D. 2008).

*Point I – There was Sufficient Evidence McIntosh's Conscious Object was to Purposely Cause Suffering to an Animal*

One commits the offense of animal abuse if he or she, *inter alia*, "[p]urposely or intentionally causes injury or suffering to an animal[.]"  Section 578.012.1(2).  Count I alleged McIntosh "purposely caused suffering to a dog."  A person "'acts purposely', or with purpose, with respect to his or her conduct or to a result thereof when it is his or her conscious object to engage in that conduct or to cause that result." ***State v. Hammond***, 569 S.W.3d 21, 27 (Mo. App. W.D. 2018) (quoting section 562.016.2).  McIntosh

872, 874 (Mo. App. S.D. 2019) ("On appeal, sufficiency of the evidence is reviewed on the merits, regardless of whether that issue was raised at trial.").

acknowledges the evidence at trial shows he had "a conscious object to kill" or "sacrifice" the dog but nonetheless argues there was insufficient evidence he acted with the purpose of causing the dog to suffer.

"Direct proof of a required mental state is seldom available, and the mental state may be proved by indirect evidence and inferences reasonably drawn from the circumstances." *State v. Miller*, 448 S.W.3d 331, 334 (Mo. App. S.D. 2014) (quoting *State v. Johns*, 34 S.W.3d 93, 110 (Mo. banc 2000)) (alteration omitted); *see also State v. Fackrell*, 277 S.W.3d 859, 863-64 (Mo. App. S.D. 2009) (using circumstantial evidence to infer the defendant's mental state for purposes of animal abuse). In *State v. Roberts*, the extent of a defendant's violence against a dog and the resulting injuries were sufficient circumstantial evidence that the defendant purposely or intentionally caused injury or suffering to an animal under section 578.012.1(2). 8 S.W.3d 124, 126 (Mo. App. W.D. 1999). The defendant beat a dog with an oak stick 20 to 25 times until its ribs broke, sodomized the dog with a hose, and a witness could hear the beating and dog yelping for "more than an hour." *Id.* at 125. *State v. Hill* similarly held there was sufficient evidence for a fact finder to infer a defendant purposely and intentionally inflicted suffering upon an animal from the defendant initially stabbing a mother cat "out of rage" while it was still alive, slicing "the cat open from throat to groin[,]" and stabbing each of the cat's five kittens no less than four times each. 996 S.W.2d 544, 547 (Mo. App. W.D. 1999). Importantly, *Hill* distinguished the extent of cats' suffering from "the incidental infliction of suffering in the process of humanely killing an animal[,]" which section 578.012 permits. *Id.*

5

Here, like in ***Roberts*** and ***Hill***, McIntosh's actions went beyond what would be required to merely kill or "sacrifice" the dog, and the State therefore presented sufficient circumstantial evidence McIntosh acted with the conscious object of causing the dog to suffer. McIntosh used a leash as a makeshift collar to swing and "helicopter" the dog around the yard. Once the dog hit the ground, McIntosh continued his assault by climbing on top of the animal, choking it, and slamming its head into the ground. The dog screamed and tried to get away, and E.B. testified "the dog was clearly in distress[.]" Despite the dog's cries, despite its distress, and despite E.B. telling McIntosh to let the dog go, he said the dog "deserves what it gets." E.B. described McIntosh as being "in a pure rage, like evilness." E.B. also contradicted McIntosh's testimony about the dog being "food aggressive" by describing it as a small to medium-sized dog with a sweet demeanor, which she had known since it was a puppy. The trial court could reasonably conclude from all of this circumstantial evidence that McIntosh purposely caused suffering to an animal per section 578.012.1(2). *See **Hill***, 996 S.W.2d at 547 ("All of this evidence permits a reasonable [fact finder] to find beyond a reasonable doubt that [the defendant's] purpose was to inflict injury and suffering on the animals, not just kill them.").

Point I is denied. The trial court's judgment is affirmed.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS

6